NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM J. EBNER<br><br>Plaintiff,<br><br>v.<br><br>STS TIRE AND AUTO CENTER,<br><br>Defendant. | Civ. Action No. 10-2241 (KSH)<br><br>**OPINION** |

### KATHARINE S. HAYDEN, U.S.D.J.

Plaintiff Willam Ebner asserts that when defendant Somerset Tire Service, Inc. ("STS")[1] bought his former employer McDonough Tire and reopened it under the STS brand, it declined to hire him due to his advanced age. He brought claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), New Jersey Law Against Discrimination ("NJLAD"), and New Jersey common law (Am. Compl. ¶¶ 5–22), and STS now moves for summary judgment [D.E. 18].

### I. Statement of Facts

Ebner, who was born on April 30, 1933, began working with McDonough Tire in June 1965, and over the course of 44 years, he rose to the position of assistant manager. (Compl. ¶ 1; Def.'s Statement of Material Facts ¶ 3.) According to Ebner, on March 23, 2009, Michael Connelly, STS's Director of Retail Service and Sales, and Kevin Traier, STS's Vice President of Retail Operations, came to the McDonough Tire store in Montclair and told the staff there that it

---

[1] STS is incorrectly pleaded as STS Tire and Auto Center. (Answer.)

had purchased McDonough Tire.  (Pl.'s Statement of Material Facts ¶9; Def's Statement of

Material Facts ¶ 5.)  Ebner states that Connelly and Traier assured the McDonough Tire

employees that everything would "stay the same" after the purchase, and that the only change

would be the name on their paychecks, but STS contends that it told the employees only that

some things would stay the same and some things would change.  (Pl.'s Statement of Material

Facts ¶ 9; Reply Br. at 1–2.)  At the same time, STS provided the McDonough Tire employees

with applications to work for STS, and Ebner completed one, as did all seven of McDonough

Tire's full-time employees.  (Def's Statement of Material Facts ¶ 5; Pl.'s Statement of Material

Facts ¶ 11.)  Although Ebner was "definitely" qualified for the position of assistant manager with

STS, he was not offered the position.  (Pl.'s Statement of Material Facts ¶ 8.)  He was 76 years

old at the time.  (Pl.'s Statement of Material Facts ¶ 11.)  While he alleges in his complaint that he

was wrongfully discharged from STS, he concedes that, in fact, he was never employed by STS.

(Compl. ¶ 12; Ebner Interog. ¶ 8; Opp'n Br. at 9.)  Indeed, STS acquired McDonough Tire via an

asset purchase agreement that stated that STS had discretion regarding whether to hire the

existing McDonough Tire employees.  (Ryan Aff., attached to Leo Certif. as Ex. G, ¶ 5.)

The details surrounding STS's decision not to hire Ebner are convoluted and, in large part,

in dispute.  Ebner asserts that he was the only McDonough Tire employee not put through the due

diligence process and not offered a position with STS.  (Compl. ¶ 9; Pl.'s Statement of Material

Facts ¶ 16.)  He recalls that while meeting with Traier and Connelly, he was asked how long he

planned on working, and that STS then told him they had nothing for him.  (Pl.'s Statement of

Material Facts ¶ 12.)  He also states that STS offered the assistant manager position to James

Coerper, McDonough Tire's thirty-eight-year-old service manager.  (Pl.'s Statement of Material

Facts ¶¶ 23–33.)  Further, STS eventually hired Kevin McDonough and another younger man, Alberto Sanchez, as assistant managers.  (Traier Dep. 62:8–15.)

STS contends that although Ebner was indeed qualified, it made a business decision to staff the Montclair store with STS management from a recently closed branch who had a pre-existing knowledge of STS's operations.  (Connelly Dep. 28:6–12.)  Because no position was open, STS says, it had nothing to offer Ebner.  (Traier Dep. 33:20–34:3.)  In addition, Connelly stated that he did not offer Coerper the assistant manager position.  (Connelly Dep. 47:20–2.)[2] Furthermore, STS management's descriptions of McDonough's position with STS vary depending on whose description it is.  Traier stated that McDonough is not an assistant manager, calling McDonough's role a "sales position."  (Traier Dep. 43:5-9.)  Connelly, however, stated that "I am assuming that we named [McDonough] an assistant manager.  I don't know that for a fact."  (Connelly Dep. 40:23.)  Meanwhile, Michael Ryan, a STS Vice President, stated that McDonough "replaced Mr. Ebner as the assistant manager."  (Ryan Aff. 7.)

Nor is it entirely clear who has served as an assistant manager at the Montclair STS store. Connelly stated that, at various times since the acquisition, management positions at the store have been held by several people, including Brian Wieser, a man named Doug whose last name is not provided by the parties, Sanchez, and McDonough, the former owner of McDonough Tire. (Connelly Dep. 30:10–4, 40:23–4, 78:14–79–16.)  STS claims that aside from McDonough, it has used only pre-existing employees to fill management positions in Montclair.  *Id.*  As it stands today, McDonough and Sanchez appear to share assistant manager responsibilities, with McDonough serving in a less formal, part-time role.  (STS Interog. ¶ 19; Traier Dep. 62:8–15.)

---

[2] Coerper's own recollection is contradictory: On one hand, he asserts that Connelly and Traier offered him the position of assistant manager, but he also states that the two men did not "affirmatively offer" him the position. (*Compare* Statement of James Coerper, ¶ 6 *to* Coerper Dep. 41:6–14.)

Ebner filed an amended complaint in the Superior Court of New Jersey, alleging three causes of action.  The first count alleged age discrimination in violation of the NJLAD.  N.J.S.A. § 10:5-1, *et seq*.  The second count alleged a "Violation of Public Policy of the State of New Jersey," on the grounds that New Jersey's public policy prohibits discrimination on the basis of age.  The final count alleged age discrimination in violation of the ADEA, 29 U.S.C. §§ 621–634. STS removed the suit to federal court on May 4, 2010 [D.E. 1], and subsequently filed the instant motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the court must draw "all reasonable inferences from the underlying facts in the light most favorable for the non-moving party." *Battaglia v. McKendry*, 233 F.3d 720, 722 (3d Cir. 2000).  The role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Fakete v. Aetna*, Inc., 308 F.3d 335, 337 (3d Cir. 2002) (citations omitted).

## III. Discussion

### A. ADEA

The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a).  The

4

parties have analyzed the issues in accordance with the burden-shifting framework set forth in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802 (1973), which courts have agreed is appropriate in assessing whether a plaintiff's ADEA claims survive summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (applying *McDonnell Douglas* test in a lawsuit arising under the ADEA); *Keller v. Orix Credit Alliance Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (same).

The first step in the analysis requires the plaintiff to "produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a prima facie case." *Keller*, 130 F.3d at 1108. This Court has established that to do so the plaintiff must assert

> (1) that he belongs to a protected class;
> (2) that he applied for and was qualified for the job;
> (3) that despite his qualifications, he was rejected; and
> (4) that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications.

*Dunleavy v. Montville Township*, 2005 WL 1917610, at *2 (D.N.J. 2005) (Hayden, J.).

"By establishing a prima facie case, the plaintiff . . . creates a rebuttable 'presumption that the employer unlawfully discriminated against' him." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983). To rebut this presumption, the employer must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The employer can meet its burden "by offering admissible evidence sufficient for the trier of fact to conclude" that it declined to hire plaintiff for a legitimate reason. *Reeves*, 530 U.S. at 142. If it does so, "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." *Fuentes*, 32 F.3d at 763. The plaintiff may defeat an employer's motion for summary judgment by either "(i) discrediting the proffered reasons, either circumstantially or

directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id*. at 764. Throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff. *Id*. at 763.

Initially, the Court observes that the parties disagree on the appropriate elements required to establish a prima facie case. STS concedes that Ebner can satisfy the first three elements, but contends that to establish the fourth element, Ebner must show that he "was replaced by someone sufficiently younger *of comparable or lesser qualifications*." (Moving Br. at 3–4 (emphasis added).) For this statement of law, STS points to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *O'Connor v. Consol. Coin Caterers Corp*., 517 U.S. 308 (1996), and *Embrico v. U.S. Steel Corp*., 404 F. Supp. 2d 802, 818 (E.D. Pa. 2005). (Moving Br. at 3.) Ebner, on the other hand, asserts that the correct test requires him to show that he was "ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." (Opp'n Br. at 9.) For this proposition, Ebner cites two cases: *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009), and *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004). [3]

This Court has held that to fulfill the fourth element of a prima facie age discrimination case a plaintiff must show "that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications." *Dunleavy* 2005 WL 1917610, at *2. The use

_____

[3] STS incorrectly attempts to discredit the legal standard Ebner sets forth on the grounds that it is inapplicable to failure-to-hire cases. While *Smith* was indeed a discriminatory discharge suit, *Potence* involved the defendant's failure to hire the plaintiff. *See Smith*, 589 F.3d 684; *Potence*, 357 F.3d at 370. Further, among the cases cited by STS, only *McDonnell Douglas* involved a defendant's failure to hire (and even that situation was not completely analogous, because the plaintiff had been previously employed by the defendant, and had alleged that defendant's refusal to rehire him was motivated by race). *See McDonnell Douglas Corp.*, 411 U.S. 792 at 796; *O'Connor*, 517 U.S. at 308 (involving discriminatory discharge claim); *Embrico*, 404 F. Supp. 2d at 828 (involving disparate impact claim).

of the disjunctive reflects the Court's desire to target conduct that would indicate age discrimination while facilitating the "relatively minimal requirements of a prima facie showing." *Id*.

Therefore, STS's argument that Ebner has failed to make out a prima facie claim because he "has never asserted that any of the individuals placed in the assistant manager position at the STS Montclair location were less qualified than or comparably qualified to [him]" is groundless. (Moving Br. at 4.)  Such a showing is not necessary.  Ebner may also satisfy the fourth element of a prima facie case by asserting that the position was ultimately filled by someone sufficiently younger to permit an inference of discrimination, a contention he does in fact make by setting forth evidence that Sanchez, who is approximately 30 years old, was hired as an assistant manager at STS's Montclair store.  (Opp'n Br. at 10; Pl.'s Statement of Material Facts ¶¶ 38–39.) Therefore, Ebner has established a prima facie case of age discrimination under the ADEA.

Because Ebner has surmounted the initial hurdle, the burden shifts to STS to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Fuentes*, 32 F.3d at 763.  STS asserts that it did not offer Ebner the assistant manager position because it "made a business decision to utilize existing management employees at its Montclair location."  (Moving Br. at 5; Traier Dep. 33:5–33:11; 33:20–34:3.)  According to STS, it is the "customary practice of STS in connection with acquisitions [to replace] the top management of the target company with current STS manager-employees who have experience with the STS point of sale and other operating systems, accounting and financial requirements and protocols, management and marketing styles, and the STS employee-ownership culture."  (Ryan Aff. ¶ 6.)  Because it opted to fill the Montclair store with pre-existing STS employees—particularly employees from another STS store in Pompton Plains that had just closed—there were, according to STS, no openings for

Ebner.  (Connelly Dep. 45:6–15.)  The defendant's burden at this stage is "relatively light," and therefore STS has provided sufficient evidence to convince a reasonable factfinder that it had a "legitimate, nondiscriminatory reason" for not hiring Ebner.  *Fuentes*, 32 F.3d at 763.

After the defendant presents a legitimate, nondiscriminatory reason for the employee's rejection, "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual."  *Id*.  As noted above, the plaintiff may defeat an employer's motion for summary judgment by either "(i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  *Id*. at 764.  "The non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Id.* at 765 (internal citations, quotations and alteration omitted).

Ebner presents several arguments in an attempt to discredit STS's proffered reasons and show that they were pretext for discrimination.  First, he argues that STS's reason was pretextual because STS offered the assistant manager position to the thirty-eight-year-old James Coerper.  (Opp'n Br. at 14.)  Coerper was a McDonough Tire employee, and, Ebner contends, if STS did indeed have a policy to only hire STS management, then it would not have offered Coerper the position.  Coerper's own account creates a certain measure of doubt as to whether he was offered the position.  At one point, Coerper stated that "Michael Connelly and Kevin Traier offered me the position of Assistant Store Manager," (Statement of James Coerper ¶ 6.), and when asked

whether he believed that if he "wanted the assistant manager position, [he] would have been employed by STS," he responded, "Uh-huh, yes."  (Coerper Dep. 46:24–47:2.)  However, he also said that he was never "affirmatively" offered the position of assistant manager.  (Coerper Dep. 41:11–4.)  Nevertheless, on a summary judgment motion, the court must draw "all reasonable inferences from the underlying facts in the light most favorable for the non-moving party." *Battaglia*, 233 F.3d at 722.  A reasonable jury, viewing the facts in the light most favorable to Ebner, could believe that Coerper was offered the position, and could thus infer that STS's purported policy of hiring its own employees for management positions was not the reason STS did not hire Ebner.

Next, Ebner points to the fact that, again contrary to its purported policy of hiring from within, McDonough was given the position of assistant manager.  (Opp'n Br. at 18–19.)  Here, there is disagreement about whether McDonough was actually installed as an assistant manager. STS's Vice President of Administration, Michael Ryan, declared in his affidavit that "STS agreed to hire Kevin McDonough as the assistant manager."  (Ryan Aff. ¶ 7.)  He further stated that "[b]ut for the hiring of Kevin McDonough, STS would have hired Mr. Ebner as the assistant manager of the Montclair Store."  (Ryan Aff. ¶ 8.)  Meanwhile, Traier stated that Ebner was never even considered for the position, and that McDonough is not really an assistant manager, but rather "in a sales position, if you want to call it."  (Traier Dep. 43:8, 53:2.)  Connelly specified that McDonough was hired by STS only to "help with the transition of the business from McDonough Tire to STS . . . and basically introduce [STS] to his customers."  (Connelly Dep. 40:5–12.)  The Court need not resolve the question of what position McDonough holds at STS, as at this stage, the role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

Because a reasonable jury could believe that McDonough was hired as an assistant manager by STS, the jury could infer that STS's purported policy of hiring managers from within was not the reason it did not hire Ebner.

There exist other issues of material fact, as well.  Ebner asserts that when he interviewed with Connelly and Traier on March 26, 2009, they asked him at the outset how long he planned to work.  (Ebner Dep. 56:14–57:10.)  He also points out that while Connelly said Ebner was considered for the assistant manager position at the Montclair store, Traier stated that Ebner was never considered for the position.  (Connelly Dep. 46:6–8; Traier Dep. 52:4–6.)  In addition, Ebner was the only McDonough Tire employee who was not hired by STS.  (Ryan Aff. ¶ 10; Ryan Dep. 35:7–19.)  Furthermore, between April 17, 2009, when STS took over the Montclair store, and August 2009, when Sanchez was hired, STS employed "three or four" different assistant managers, including Wieser, who was floating between stores for training and stayed at the Montclair store for longer than expected because STS "needed the help in that store as an assistant manager."  (Ryan Aff. ¶ 3; STS Interrog. ¶ 23; Connelly Dep. 35:21–36:2.)

Taken together and viewed in the light most favorable to Ebner, these facts establish that there is a genuine issue as to whether STS declined to hire him because of his age.  In regard to Connelly and Traier's question about how long Ebner would work, STS correctly notes that "[e]mployers are entitled to consider the long-term potential of employees when making business decisions."  *Young v. Hobart W. Grp.*, 385 N.J. Super. 448, 463 (App. Div. 2005).  Viewed as a whole, however, the facts show that a reasonable jury could conclude that STS strayed from its policy of filling open management slots from within and, despite knowing of Ebner's interest in the assistant manager position, filled that role with a revolving door of temporary appointees before settling on a permanent hire who is less than half Ebner's age, without giving Ebner a

second thought and leaving him as the only full-time McDonough Tire employee without a

commensurate position at STS.  Against this background, a reasonable jury could believe that

Connelly and Traier's question about Ebner's long-term plan was the harbinger of a hiring

decision based on Ebner's age.  Thus, STS's motion for summary judgment on Ebner's ADEA

claim is denied.

**B. NJLAD**

Because the relevant legal principles governing the NJLAD and the ADEA are the same,

NJLAD claims follow the familiar burden-shifting framework set forth in *McDonnell Douglas*.

*See Keller v. Orix Credit Alliance Inc.*, 130 F.3d 1101, 1113 n.5 (3d Cir. 1997); *McKenna v.*

*Pacific Rail Serv.*, 32 F.3d 820, 827 (3d Cir. 1994); *Grigoletti v. Ortho Pharmaceutical Corp.*,

118 N.J. 89, 110 (1990) (*McDonnell Douglas* scheme applies under NJLAD); *Erickson v. Marsh*

*& McLennan*, 117 N.J. 539, 548 (N.J. 1990) (analyzing sex discrimination pursuant to NJLAD

under the *McDonnell Douglas* framework).  However, the NJLAD specifies that "nothing herein

contained shall be construed to bar an employer from refusing to accept for employment or to

promote any person over 70 years of age."  N.J.S.A. § 10:5-12(a).[4]  Although in his complaint

Ebner alleges that he was wrongfully discharged in violation of the NJLAD, he later concedes

that "[t]he ultimate issue to be decided in this case is whether Mr. Ebner was discriminated

against, in not being hired due to his age."  (Opp'n Br. at 5.)  He attempts to reframe his claim as

a "refusal to renew" his employment contract, because in such a case the NJLAD does apply to

individuals older than seventy.  *See Nini v. Mercer County Cmty. Coll.*, 202 N.J. 98, 115 (2010)

("We thus read the 'refusal to accept for employment' language as limited to initial hires and

---

[4] Originally, the ADEA contained a limitation similar to that contained in the NJLAD, namely, that the law's
protections did not extend to individuals over the age of seventy.  Pub. L. No. 95-256, 92 Stat. 189 (codified at 29
U.S.C. §§ 663(a) (1982)).  However, with Congress's 1986 amendments, this limit was abolished, and today the
ADEA's protections extend to all individuals older than forty.  Pub. L. No. 99-592, 100 Stat. 3342 (codified at 29
U.S.C. §§ 631(a))

decline to expand it to workers whose contracts have not been renewed.").  However, by Ebner's own repeated admission, he was never an employee of STS, and therefore he had no contract with STS that could have been renewed.  In a further attempt to preserve his NJLAD claim, Ebner contends that "recent case law and public policy require consideration of whether Defendant's action violated the NJLAD."  (Opp'n Br. at 9.)  The reference to "recent case law" is apparently intended to invoke the *Nini* holding, but beyond that, Ebner presents no argument in favor of extending the NJLAD's protections to people in his circumstances, and this Court hesitates to do so in the absence of New Jersey court decisions that directly address the question.  *See Roy v. Brahmbhatt*, 2008 WL 5054096, at *9 n.6 (D.N.J. Nov. 26, 2008) (Sheridan, J.).  Therefore, because he was older than seventy when STS decided not to hire him, Ebner's age discrimination claim under the NJLAD is barred and defendants are entitled to summary judgment on this claim.

### C. New Jersey Public Policy

STS contends that Ebner's public policy claim is preempted by the NJLAD (Moving Br. 10–11), while Ebner counters that if his NJLAD claim is barred by the exception for persons over the age of 70, he should be allowed to proceed on his public policy claim (Opp'n Br. at 20–21). In New Jersey, an at-will employee "has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy."  *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 567 (D.N.J. 2000) (Orlofsky, J.) (quoting *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72 (1980)).  The existence of the NJLAD suggests that it is New Jersey's public policy to prohibit discrimination on the basis of age.  *Id*.  However, numerous courts have suggested that the NJLAD's statutory cause of action might preclude a common law claim of wrongful discharge.  *See Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 73 (3d Cir. 1996) ("[b]ecause the sources of public policy [plaintiff] relies on are coterminous with his statutory

claims, he cannot advance a separate common law public policy claim."); *Caldwell v. KFC Corp.*, 958 F. Supp. 962, 970 (D.N.J. 1997) (Irenas, J.) (same); *Schanzer v. Rutgers Univ.*, 934 F. Supp. 669, 678–79 (D.N.J. 1996) (Simandle, J.) (same); *Kapossy v. McGraw-Hill, Inc.*, 921 F. Supp. 234, 249 (D.N.J. 1996) (Orlofsky, J.) ("The parties agree that a common law claim for wrongful termination is not viable insofar as it seeks the same remedy available under the NJLAD."); *Erickson v. Marsh & McLennan Co.*, 117 N.J. 539 (1990) (stating in dicta that "if the [NJLAD] creates a remedy, 'it might be unnecessary to recognize or create a Pierce-type action to vindicate substantially the same rights and provide similar relief.'") (quoting *Shaner v. Horizon Bancorp.*, 116 N.J. 433, 454 (1989)); *Catalane v. Gilian Instrument Corp.*, 271 N.J. Super. 476, 491–92 (App. Div. 1994) (providing that supplementary common law causes of action are precluded when a statutory remedy under the NJLAD exists).

This court need not determine whether Ebner's public policy claim is preempted or whether the bar erected by the NJLAD keeps his public policy claim alive. As noted, Ebner concedes that he was never employed by STS. Therefore, he has not stated a wrongful discharge claim, even insofar as it might be viable. What Ebner actually alleges is a common law action for failure to hire, a cause of action not recognized by New Jersey courts. *Sabatino v. St. Aloysius Parish*, 288 N.J. Super. 233 (App. Div. 1996) (characterizing situation in which the principal of one of two parochial schools closed by archdiocese was not hired to serve as principal of new school opened by archdiocese as a failure-to-hire claim and stating that "*Pierce* has not been applied to failure to hire or promote situations.") Because no common law cause of action for failure to hire exists, summary judgment is granted on Ebner's "public policy" claim.

13

**IV. Conclusion**

Based on the foregoing, STS's motion for summary judgment is granted as to Ebner's NJLAD and New Jersey common law claims, and denied as to Ebner's ADEA claim.  An appropriate order will be entered.


/s/ Katharine S. Hayden

September 9, 2011                                   Katharine S. Hayden, U.S.D.J.

14